IN RE APPLICATION OF FRANKLIN D. REIS ET AL.
FRANKLIN D. REIS ET AL., APPELLEES, V.
THE GLENWOOD TELEPHONE MEMBERSHIP
CORPORATION, APPELLANT.

299 N.W.2d 771

Filed December 29, 1980. No. 43011.

W. G. Cambridge for appellant.

Conway and Connolly for appellees.

Bert L. Overcash, amicus curiae.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an appeal from an order of the Nebraska Public Service Commission granting the application of three subscribers of the Glenwood Telephone Membership Corporation (hereafter telephone company) to receive telephone service from the Hastings or Juniata exchange of the Lincoln Telephone and Telegraph Company (LT&T).

The original applications were filed with the com-

mission on February 7, 1977. After a hearing, the commission granted the applications and held that the applicants had met the requirements of Neb. Rev. Stat. § 75-613 (Reissue 1976). The telephone company appealed. We remanded the case with specific directions to the commission to determine whether the granting of the applications would be economically sound within the meaning of § 75-613(2). *Reis v. Glenwood Telephone Membership Corp.*, 202 Neb. 187, 274 N.W.2d 539 (1979). On September 11, 1979, after a hearing, the commission voted 3 to 2 to grant the applications and the telephone company has appealed. We affirm.

Section 75-613 requires that an applicant establish all of the following: "(1) That such applicant or applicants are not receiving, and will not within a reasonable time receive, reasonably adequate exchange telephone service from the company furnishing such service in the exchange service area in which the applicant or applicants reside or operate;

"(2) The revision of the exchange service area or areas required to grant the application will not create a duplication of facilities, is economically sound and will not impair the capability of the telephone company or companies affected to serve the remaining subscribers in any affected exchanges;

"(3) The community of interest in the general territory is such that the public offering of each telephone company in its own exchange service area involved should include all the territory in its service area as revised by the commission's order; and

"(4) The applicant or applicants are willing and will be required to pay such construction and other costs and rates as are fair and equitable and will reimburse the affected company for any necessary loss of investment in existing property as determined by the Public Service Commission."

In *Reis v. Glenwood Telephone Membership Corp.* (1979), we found that these applicants had met the

requirements of § 75-613 except subsection (2). Originally, the commission held that the revision in the exchange service areas was economically sound, based on the applicants' testimony that they would reimburse Glenwood for its loss of investment. However, we held that was an insufficient basis under the statute. "[I]n determining economic soundness the commission must consider the financial condition of the protestant telephone company, the effect of the revision on its income and ability to service its debt, the likelihood that the revision will require future rate increases by the affected company, the fact that subscribers other than the applicants may have equally meritorious claims and the general effect of gradual erosion . . . ." *Id.* at 199, 274 N.W.2d at 545.

At the hearing preceding the September 11, 1979, order the commission received evidence in the form of testimony from 24 witnesses living in the Glenwood service area near the border of the LT&T exchanges. The telephone company called these witnesses to show the effect of granting the applications on other subscribers of Glenwood who were similarly situated. The commission also received evidence showing the number of people who had transferred from the Glenwood exchange to other exchanges in the past and the number of people who had transferred to Glenwood from LT&T. The telephone company's financial statements for the years 1968 to 1978 were admitted into evidence showing the telephone company's budgeted revenue and actual revenue and expenses.

Based on the evidence, the commission specifically found that, of the 24 witnesses called by the telephone company, 7 were either undecided as to their preference or preferred Glenwood service; 4 indicated they intended to file applications for change of service if these applicants were successful, and 13 did not intend to file an application or were not willing to reimburse Glenwood for its investment. The commission further noted that, of the four who intended to

file applications, two were not presently subscribers of Glenwood, and concluded that the other two subscribers may have equally meritorious claims as the present applicants. The commission stated that "based upon the evidence of the past, it is even more likely that Glenwood will gain more subscribers than it will lose," and that, including the other two subscribers indicating an intention to file an application, the loss of revenue to Glenwood would be less than .20 of 1 percent of its total operating revenue, and that the loss of revenue from these applicants would not significantly affect the income of Glenwood or its ability to service its debt, and would not require future rate increases. There is evidence in the record to support these findings.

"This court will not disturb an order of the Commission unless the Commission's order is illegal, arbitrary, capricious, or unreasonable." *Dilts Trucking, Inc. v. Peake, Inc.*, 197 Neb. 459, 466, 249 N.W.2d 732, 737 (1977). The determination of what is economically sound under § 75-613(2) is peculiarly within the discretion and expertise of the Public Service Commission. See, *Gentry Real Estate Co., v. King's Limousine Service, Inc.*, 201 Neb. 761, 272 N.W.2d 359 (1978); *Dilts Trucking, Inc. v. Peake, Inc., supra.* "[W]here the evidence is in conflict, the weight of the evidence is for the determination of the Commission and not this court." *Dilts Trucking Inc. v. Peake, Inc., supra* at 466, 249 N.W.2d at 737.

There is ample evidence in the record to support the conclusions and order of the Nebraska Public Service Commission, and that order is affirmed.

AFFIRMED.

BRODKEY, J., concurs in result.